Good afternoon, Your Honor. The appellant reserves three minutes for rebuttal. My name is John Behrenbaum, and along with Christine Clark, who's sitting at the table, we represent the appellant, Marisha Estabrook, in this appeal of the District Court's order granting judgment on the pleadings and dismissing the complaint in its entirety. The District Court's decision was in error. We're asking that this Court reverse it and allow the plaintiff, the appellant, to have her case decided on the merits. As you most likely know, there are three claims at issue here that were pled in the complaint. One, a claim for sexual and third, retaliation itself by the Employer Safety and Ecology Corporation. I think that the easiest issue, the most, if I may say, flagrant error in the lower court's decision dealt with the second issue of retaliatory harassment. The District Court held that that claim should be dismissed because the plaintiff hadn't pled that the harm was severe or pervasive. And with all due respect, I believe that the lower court simply misread the complaint. The lower court interpreted the complaint, construed the complaint, as simply a workplace civility complaint. It focused on the fact that Ms. Estabrook was shunned, that people didn't talk to her, but it ignored the most important allegations of co-worker retaliation. And those were that Mr. Chase, the sex harasser, maligned her and said that she was saying that her immediate supervisor was incompetent, ineffectual. And the second act was that Ms. Estabrook's co-workers set her up as having tampered with federally sponsored experiments, which is both a potential crime and a terminable offense. This court, on at least two occasions in Suitors and Levandos, has ruled that when co-workers falsely accuse a plaintiff of misconduct, of serious misconduct, not only is that severe or pervasive, but that rises to objectively intolerable conduct that warrants a finding of constructive discharge. So I think that's the first error, if I may say so. The second complaint deals with sexual harassment. The issue there is can the court impute liability to the employer for the co-worker's sexual harassment? And there the plaintiff had three grounds on which claiming that such liability is appropriate. And we relied upon, this is all under the New Jersey law against discrimination, and that statute is based on, it's a negligence theory in deciding whether the employer has been negligent. If the employer is negligent in either preventing or stopping their harassment, then it is liable for co-worker harassment. And you're talking about the harassment that occurred to her because presumably the employer was on notice before when the remark was made, I don't know why the management hasn't done anything about Chase. That's basically it. That's correct, Your Honor. But the sex harassment stopped once she complained to Black, correct? That's correct. And I think that's, of all the issues, maybe that's the one that needs to be addressed most. Because that's what the district court hung its hat on. And it, saying that because the harassment You had retaliation after that, but it wasn't sexual harassment. That's right. And so the issue is, was it an effective remedial measure that cut off the employer's liability for the sexual harassment? And there are two responses to that. One is, it wasn't effective because it allowed her to be vulnerable to retaliation. It put her in a worse position than she was in when she was being sexually harassed. That's the first point, that it was not effective. I also want to just add, there's nothing in the record that what the supervisor actually did. There's nothing in the record that she disciplined Mr. Chase, that she warned Mr. Chase, that she moved him from the facility. All we know is the harassment stopped. She spoke to him. We assume that. We assume that. Whatever she did, as far as sexual harassment goes, it was sufficient because it stopped. Okay. I'll accept that, Your Honor. But my point is the same. She was put in a vulnerable position to the point where she had to quit. Excuse me. But there's another argument which says that even assuming it was effective, that under the law against discrimination, that doesn't cut off all of the negligence preceding that that allowed the sexual harassment to happen. And that relates to the prior individuals and whether there was notice to SEC about that such that she should never have been subjected to it in the first place because they did not do anything when they knew about these other individuals. That's exactly right. That and also that they had an ineffective sexual harassment policy, which we can talk about later. I don't want to get into it too much, but in our brief, we recite appellate division cases from the New Jersey courts where even though the harassment stopped, because there was a lousy policy in place, if that lousy policy allowed the harassment to happen in the first place and that was a proximate cause of the sexual harassment, it didn't cut off the liability simply because the harassment stopped. Well, and you wonder with the remarks that were made by a lot of the male, well not just the male, but the women, that I guess you would like to be able to at least allege and get past the pleading stage that how could the policy be very effective when these people are definitely not taking this seriously. Yeah. And isn't that really the issue, whether Judge Kavanaugh used too strict a pleading standard? This was a 12C motion. Yes. I think that is certainly, if it's the issue or one of the primary issues, I totally agree. He used too strict a pleading standard. That's right. It was a pleading standard appropriate for a motion for summary judgment. Now, there was discovery and there's a motion about discovery, but isn't that largely irrelevant? That's our position. If I may, the discovery question here is, we only got discovery, the appellant, after we submitted our brief. So when we submitted our brief to the district court, we didn't have any discovery. But why does it matter? It doesn't matter. It doesn't matter. I just wanted to set the record straight. Again, we're talking about pleading. It's pleading. Your complaint stands on its own. Whether you should have amended later, it's not really relevant to what's before us, is it? I agree. Well, I suppose if information comes to you that would make clear that something you've said in your complaint or elsewhere is not true, would you think you had an obligation to correct that with the court? I'm not saying that. Yeah, perhaps, but that's not the case here. Yeah, well, that's the way you ducked the question. I don't blame you. And if I could just say one other thing on the issue of discovery, it was very limited. It was the first round of documents were produced. No ESI, no electronics stored information was produced. We didn't have any depositions. Well, they had requested the first set of interrogatories and first set of production of documents, and from what I'm gathering from those papers in support of the motion to file the supplemental offending, that those requests had been honored. That's correct. They had received the interrogatories and the documents. That's correct. My point is just that in a harassment case, that's very minimal amount of discovery. And if I may say one other thing about this issue, plaintiff did request that the motion for judgment on the pleadings be converted to the motion for summary judgment. When the defendant in their reply papers appended the EEO policy, and it's in the docket sheet number 39, I wrote a letter requesting that now this matter should be converted into summary judgment. So it wasn't. I think we covered all the bases. If I may, I'll just briefly talk about the retaliation claim itself. We spoke about the co-worker retaliation, but this is retaliation by the employer for adverse employment actions, suspension, demoting, and then... Was reassignment as a field tech a demotion? I'm sorry? Was reassignment as a field tech a demotion? Well, that issue wasn't addressed by the court, and it certainly... I would say it was because her responsibilities were so degraded that I consider it... We don't know if it was or not, or I don't... You just say, I would say it was. I mean, do they have grade level... Oh, it was a constructive demotion. But even if that term doesn't fit, even if it was just a reassignment, it still would be an adverse employment action because her responsibilities as a chemist were taken away, and she was given much lesser menial responsibilities. So it doesn't matter what term you apply to it. It was an adverse employment action either way. Basically, I only have a few seconds left, but on the issue of retaliation, it's our position that the court engaged in fact finding, and in selective reading of the complaint, so that... So for instance, saying that the decision makers weren't aware of the protected activity. That's just not true, and I see my time is up, and I will... Robutt will be able to expand on that. Thank you. May it please the court. Good afternoon, your honors. My name is David Harvey, and I represent Safety and Ecology Corporation. Your honors, Ms. Hesterbrook's complaint does not state a claim upon which relief can be granted. Therefore, I ask this court to affirm the judgment of the district court, dismissing her complaint in its entirety. First, Ms. Hesterbrook's alleged sexual harassment complaint was effectively dealt with. She complained using the harassment policy that she was provided with when she became employed, followed the steps, the sexual harassment completely stopped. There is no facts or allegations in the complaint that Mr. Chase ever spoke with Ms. Hesterbrook again. Well, but we're talking about before that, and the allegation in paragraph 71. Before Chase's sexual harassment of Hesterbrook, SEC management at the Mayfield, New Jersey facility were aware of the sexual harassment, yet allowed him to continue to sexually harass female employees with impunity. So, I mean, the point is, she says, I should never have been subjected to it in the first place because they did not properly react to the fact that he had harassed other people. So the fact that finally, you know, he stopped it with her, that's beside the point. Well, and I think you have to look at the nature of this claim. This is a negligence theory, which means that SEC, Safety and Ecology Corporation, knew or should have known. In order to plead the facts, you know, when she states in her complaint that Chase sexually harassed, Chase harassed and so forth, those are legal conclusions. I don't, her factual allegations have to be accepted as true for purposes of the motion that was before the district court. The factual allegations, yes. Well, the factual, this complaint has 87 paragraphs, almost all of which are factual allegations. Well, what we would argue is that the term sexual harassment is a legal conclusion. And she provided no facts of when either Felicia Santori, this woman named Gail. Under Iqbal and Twombly, do they have to do dot every I and do a complaint? Well, I think under Iqbal and Twombly, you're obligated, the court's obligated to separate legal conclusion from factual environment. That's fine, except that there seem to be ample factual allegations, and we don't necessarily have to go through them here, that could lead to the conclusion, and those facts that must be accepted as true, that there was sexual harassment. Well. And the company knows. Well, and again. Before Chase did his deed. Again, what we would say is if, in John's, Mr. Berenbaum's briefing, he said that all of these acts of previous sexual harassment occurred before Ms. Estabrook even began to work at Safety and Ecology. However. They were committed by Chase against other women in this complaint. That's what he averts. But he also states that Felicia Santori, one of the alleged victims, was hired at the same time as Ms. Estabrook. And if this is true. Maybe that's not, maybe that's not accurate, but, you know, that's what discovery is for. For finding out, you know, from third parties, you know, she's not related to these other people, she can't find everything out immediately. Are you saying she needs to plead, she needs to go to Santori and say, okay, tell me chapter and verse exactly what he did vis-a-vis you, and you plead that? All that, whatever it might have been? Paragraphs and paragraphs in the complaint? I think that the district court stated that in this type of claim where you're pleading negligence, that the facts that Ms. Estabrook should plead some facts, whereas, and even one of the cases cited by Mr. Barenbaum in his brief, page 16, Horace Doy versus U.S. West Communications, said that a plaintiff can rely on the defendant had notice of sexual harassment by the alleged harasser upon evidence that the harassment is similar in nature and near in time. And I think what the district court said is there were no allegations of what the prior alleged sexual harassment was or when it occurred, you know, how close in time. Well, is that, I mean, the district court itself said the standard, if no relief could be granted under any set of facts that could prove consistent with the allegations, the court may dismiss the complaint for failure to state a claim. Is that what we have here? No, I believe that the... I mean, under any set of facts means you don't have to plead the facts. I think under any set of facts, I think the Supreme Court did away with the Conley recitation in Iqbal and Twombly. I'm just citing what the district court relied on here. And with regard, I know we touched on discovery before, we did respond to 21 interrogatories of which some of what was asked was name the prior complaints, all past complaints against Marcus Chase. We provided documents, we provided ESI. Yeah, but then you're saying they should have come back in and... This is after apparently, according to your friend across the aisle, after they submitted the brief to us when the discovery was provided and you're saying that they should have, what? This discovery was provided in July of 2012. The district court never ruled on the motion until December 28, 2012. The plaintiff had well over five or six months to look in that discovery and if there was anything in there that could bolster the factual allegations and I would say even today... Well, if the factual allegations and Judge Rendell's question about relevance seemed to me correct, I mean, her suggestion, we're dealing with a complaint as filed. And the question before us is really a Rule 8 notice pleading, 12C motion case. We're dealing with a complaint that was before the district court judge. That's what we have. Not what could have happened, should have happened. Well, yes, and I understand. But this court has several, many times stated that legal conclusions need to be backed up by factual averments and that generalized grievances should be backed up with specific facts that would give rise to plausible entitlement showing of relief. And what are... Well, it's kind of like saying, you know, if you want to say that something is obscene and you aver in a pleading that it's obscene, do you have to aver chapter and verse of exactly how you believe it is? And to me, it seems a little bit like the same thing with sexual harassment. You know, and they said obscenity, you know it when you see it. Well, the same thing with sexual harassment. If we're going to start saying that every little thing of sexual harassment has to be laid out every instance in a complaint, that's pleading evidence. Well, I don't think that the district court meant that they had to plead every specific thing. The only thing that the plaintiff pled in this case was she averred that Mr. Chase had previously harassed several women. And she named one in the full name and two others... Right, and she worked with Gail and Felicia, but provided no facts of when this might have happened or... So then it's not a big question as to who Gail and Patricia were. Right, no. Three women who he allegedly harassed before he harassed her. Right, but it's easy to say as a legal conclusion someone sexually harassed without saying what did they specifically do. Could you name a few facts that would give rise to a sexual harassment claim that put the company on prior notice? Well, he says your plaintiff fails to allege dates or times on which alleged harassment of other women employed by SEC occurred. I mean, maybe on summary judgment... But even in the Savurkovich case, even in the Savurkovich case, the plaintiff there did provide dates and times. And this court has also, when faced with a 12B6 motion, asked for specifics such as in Holmes v. Gates, a case that this court decided. It says, Threadbare recitals of a cause of actions elements supported by mere conclusory statements do not suffice. See, that's it. Threadbare recitals is an 87-paragraph complaint, all but two of them factual. Threadbare, it can be. I mean, we've all seen them. Three district court judges have seen them. But this has a lot of stuff in it. Well, it does have a lot of stuff in it. But what we would say is even when you look at all that stuff that's in the complaint, and you look at the counts that are pled, the violations that are alleged, when you put those facts and look at the counts, they do not state a claim. For example, with regard to plaintiff's alleged suspension for lab tampering, it's undisputed that Mr. Lanning and Mr. Henderson, Safety and Ecology's corporate officials, never even knew until about two weeks after Ms. Estabrook was suspended that she ever made a sexual harassment complaint. And even though, and this was undisputed at the district court level. Every time that, on page 17, document number 37 at the district court docket, when Mr. Berenbaum lists the alleged retaliatory acts, he stated, SEC falsely accused Ms. Estabrook of committing a potential federal crime. That was Mr. Lanning in the complaint. SEC reinstated Estabrook. That's Mr. Lanning and Mr. Henderson, or Mr. Henderson. And SEC suspended Ms. Estabrook for three weeks. Every time, it was undisputed. And this is what I'm saying, that this would have been, and now Mr. Berenbaum tries to claim in his pleadings that it was actually Mr. Lawrence and Ms. Walnicki that suspended Ms. Estabrook. But this, if that were actually what he wanted to plead, the complaint could have been easily amended to say that. Well, but just because a complaint could have been easily amended doesn't mean it doesn't meet the standards for withstanding a 12B6 motion, does it? I think in this case, the fact that the, one of the key elements in retaliation is that the retaliator must have known of the protected activity. Here, it is clear that they had no idea that she had engaged in, that there was a sexual harassment complaint that was effectively built in. And discovery and evidence may come forward that you are absolutely correct. But we're talking about pleadings. I understand that, and I would proffer that the discovery that was provided has come forward and has answered those questions. And I would say that there is an obligation upon counsel to. Well then, if that's so, and this goes back, then you can move for summary judgment, right? Right, but it's, I just think it's, when the pleadings themselves fail to satisfy the elements of certain employment claims, it's, you know, to subject our client to that much more expensive discovery, which we've already provided a lot of it, that answer all of the questions in this complaint. Then it's like an exercise, you know, we would say it's an exercise in futility, and that there is an obligation for counsel to be candid with the court about the discovery that has been received to date. And I see my time's running out. Thank you. Thank you. I just want to make two quick points. Apelli is saying that the complaint does not, that reading of the complaint shows that the decision makers for the adverse action did not have knowledge of her protected activity. And that's a misreading of the complaint. And certainly if you read the complaint in a way that favors the non-movement, it's an erroneous statement. And I refer the court to paragraph 52 of the complaint, where it reads, A week later, while Nikki and Lawrence told plaintiff that based upon what they had heard, they concluded that she was the tamperer, SCC immediately suspended her without pay and escorted her out of the building. There's no doubt that while Nikki, her immediate supervisor, and Lawrence, the head of the Mayfield Lab, knew about her protected activity, she had complained to both of them about the sexual harassment and the retaliatory harassment. And it was Lawrence who said he was a friend, who had a motive for retaliating, because he was friends with the harasser, he wanted to promote him. So I think it's a selective reading of the complaint. And then the only other thing I'd like to say is on the issue of did Estabrook plead sufficiently about the previous acts of sexual harassment, I think the key factual statement is she said that two individuals, two women, who she identified by name, complained about sexual harassment. That is the fact, and that's good enough. That's the knowledge factor. That's the knowledge factor, yeah. That's exactly right. Okay, thank you very much, Your Honor. Thank you. Thank you. We'll take the case under advisement.